

*In the*

*Missouri Court of Appeals*

*Western District*

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| **Respondent,** | ) | **WD76304** |
| | ) | |
| v. | ) | **OPINION FILED:  April 22, 2014** |
| | ) | |
| HENRY L. SUTTON III, | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Pettis County, Missouri**
The Honorable Robert L. Koffman, Judge

Before Division Three:  Thomas H. Newton, Presiding Judge, Mark D. Pfeiffer, Judge
and Cynthia L. Martin, Judge

Henry Sutton ("Sutton") appeals from the trial court's judgment convicting him of driving while revoked.  Sutton claims that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to establish beyond a reasonable doubt that Sutton was operating a motor vehicle on a highway since Sutton was driving in a closed work zone.  We affirm.

## Factual and Procedural History[1]

On July 16, 2011, shortly after 10:00 a.m., Missouri State Highway Patrol Corporal Eric Keim ("Corporal Keim") was dispatched to a motor vehicle accident on Highway 65 near the south edge of Sedalia. He observed a Jeep SUV and an Isuzu flatbed truck parked in the center lane, facing south. The front end of the SUV was damaged. The truck was positioned about twenty feet in front of the SUV. Sutton was the driver of the truck.

Sutton told Corporal Keim that he had been working with a construction crew painting turn arrows in the center lane. He was backing the truck to stay with the work crew as they progressed northward when he struck an SUV that had pulled into the center lane.

Corporal Keim, who had been through the area twice that morning, observed workers on foot painting arrows in the center lane between Sutton's truck and another similar truck at the other end of the work area. Both trucks displayed lighted arrow boards that directed traffic away from the center lane. Corporal Keim observed that the painting operation moved slowly but continuously down the center lane. There were no orange cones or other barriers to prevent traffic from traveling into the center lane. There were orange signs on the right shoulder announcing a "work zone" or "road work ahead." However, no portion of the road was marked "closed."

---

[1]We view the evidence in the light most favorable to the conviction. *State v. Russell*, 336 S.W.3d 504, 505 (Mo. App. S.D. 2011).

Corporal Keim determined that Sutton's driver's license was revoked. Sutton was issued a citation for driving while revoked, and was charged as a prior and persistent offender, a class D felony, pursuant to section 302.321.[2]

Following a bench trial, Sutton filed a motion for judgment of acquittal at the close of the evidence. He argued that there was no evidence that he was driving while revoked on a "highway" as that term is defined in Chapter 302 since the center lane of Highway 65 was a "closed work zone." The trial court denied the motion and found Sutton guilty of driving while revoked. Sutton was assessed a $500.00 fine.

Sutton appeals.

## Standard of Review

"The sufficiency of the evidence in a court-tried criminal case is determined by the same standard as in a jury-tried case." *State v. Thenhaus*, 117 S.W.3d 702, 703 (Mo. App. E.D. 2003). "In considering whether the evidence is sufficient to support the jury's verdict, we must look to the elements of the crime and consider each in turn to determine whether a reasonable juror could find each of the elements beyond a reasonable doubt." *Id.* (citing *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993)). Therefore, "we are required to take the evidence in the light most favorable to the State and grant the State all reasonable inferences from the evidence, disregarding all contrary inferences." *Id.*

## Analysis

In his sole point on appeal, Sutton argues that there was insufficient evidence to prove beyond a reasonable doubt that he was operating a motor vehicle on a highway as

---

[2]All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

3

required by section 302.321.1 and as defined by section 302.010 because the center lane of Highway 65 was a closed work zone. We disagree. Sutton's argument erroneously presumes that a "closed work zone" is temporarily removed from the scope of the statutory definition of "highway." Moreover, the evidence viewed in the light most favorable to the verdict supports the conclusion that the center lane of Highway 65 was not a "closed work zone."

Section 302.321.1 provides:

A person commits the crime of driving while revoked if such person operates a motor vehicle on a highway when such person's license or driving privilege has been cancelled, suspended, or revoked under the laws of this state or any other state and acts with criminal negligence with respect to knowledge of the fact that such person's driving privilege has been cancelled, suspended, or revoked.

To convict a driver of driving while revoked, the State must prove beyond a reasonable doubt that the driver's license was revoked, that the driver acted with criminal negligence with respect to knowledge that his driving privileges was revoked, and that the driver was operating a motor vehicle on a highway. *Thenhaus*, 117 S.W.3d at 703; *see State v. Willis*, 97 S.W.3d 548, 557 (Mo. App. W.D. 2003). Sutton only contests whether the third essential element was established. He argues that the State failed to prove beyond a reasonable doubt that the center lane of Highway 65 was a "highway" because it was a closed work zone.

4

Section 302.010(6)[3] defines "highway" as "any public thoroughfare for vehicles, including state roads, county roads, and public streets, avenues, boulevards, parkways, or alleys in any municipality."  Sutton concedes that Highway 65 is a "highway" pursuant to this definition.  He argues, however, without citation to any authority, that "closed work zones" temporarily remove portions of a highway from the statutory definition of "highway."  Our Supreme Court has expressly held to the contrary.

In *State v. Seeler*, 316 S.W.3d 920, 926 (Mo. banc 2010), the Missouri Supreme Court held that a **"*closed construction zone [is] still . . . part of the highway as defined in section 301.010.*"**  (Emphasis added.)  The definition of "highway" in section 301.010 is identical to the definition of "highway" in section 302.010(6).  The trial court relied on *Seeler* when it denied Sutton's motion for judgment of acquittal:

> I don't see how I can overcome *State v. Seeler* when it specifically says that a closed construction zone would still be part of the highway as defined in Section 301.010, which is the same description as in 302.321.  That is the only guidance this Court has on the law.

Sutton concedes the holding in *Seeler* but argues that *Seeler* is not controlling because the holding was not essential to the court's decision and was thus *obiter dictum*.  We disagree.  *Seeler's* determination that a closed work zone remains a "highway" was integrally related to the court's examination of whether Seeler was prejudiced by the late amendment of an information that originally charged Seeler with leaving the highway right-of-way.  *Id.* at 922-26.  It was in this context that the Supreme Court held:

---

[3]RSMo Cum. Supp. 2011.  Since the time of this accident in July 2011, the statutory definition of highway has remained the same but is now contained in section 302.010(7), pursuant to an amendment in 2012.

5

> The statute applies only when the defendant leaves a highway as defined in section 301.010. ***The closed construction zone still would be part of the highway as defined in section 301.010***, but is it part of the right-of-way, an undefined term in this context? Seeler's defense was that it was.

*Id.* at 926 (emphasis added). Plainly, the Supreme Court had to determine that a closed construction zone remains a "highway" before it reached the question whether a closed construction zone remains a part of the highway's right-of-way. The trial court correctly held that *Seeler* is controlling.

Even if *Seeler* was not controlling, the evidence viewed in the light most favorable to the verdict does not support a conclusion that the center lane of Highway 65 was a "closed work zone." Section 304.580 defines "work zone":

> As used in sections 304.582 and 304.585, the term **"construction zone"** or **"work zone"** means any area upon or around any ***highway as defined in section 302.010*** which is visibly marked by the department of transportation or a contractor or subcontractor performing work for the department of transportation as an area where construction, maintenance, incident removal, or other work is temporarily occurring. The term **"work zone"** or **"construction zone"** also ***includes the lanes of highway leading up to the area upon which an activity described in this subsection is being performed, beginning at the point where appropriate signs or traffic control devices are posted or placed.***

(Emphasis added.) The statutory definition of "work zone" sweeps within its ambit open portions of highway leading up to construction activity, and treats the area where construction activity is being performed as "highway" pursuant to the statutory definition. The statutory definition of "work zone" suggests that "work zones" do *not* temporarily fall outside the scope of the statutory definition of "highway."

The phrase "closed work zone" is not defined by statute. The word "closed" is ordinarily and plainly understood to mean "not open." MERRIAM-WEBSTER'S

6

COLLEGIATE DICTIONARY 216 (10th ed. 1998). Though the center lane of Highway 65 was a "work zone," Corporal Keim testified that the center lane was not marked by signage or barriers as "closed." Highway 65 was open to traffic traveling in both directions throughout the slowly progressing painting operations, with only flashing arrows mounted on two trucks signaling drivers away from the center lane of travel.

Sutton argues that at any given time, the portion of the work zone where painting operations were actively underway was "closed" and no longer a highway. Even if we accepted this argument, which we do not, the record does not support the conclusion that Sutton was operating a vehicle in a closed work zone. The record, viewed in the light most favorable to the verdict, suggests that the SUV was in the center turn lane preparing to turn into an adjacent business, and thus was not within the parameters of the slowly progressing painting operations, when it was struck by Sutton. The record does not support a conclusion that the SUV was in what Sutton argues was a "closed work zone."

Sutton cites to section 227.250, which authorizes the State Highway Commission "to close temporarily for the purpose of construction or repair any portion of a state highway to public use and to issue regulations controlling the use of state highways and all properties relating thereto." Exercise of the power to temporarily close portions of highways for construction or repair is immaterial to whether a "closed work zone" remains a "highway" pursuant to *Seeler*. In any event, there is no indication in the record that the Commission exercised its authority under section 227.250 to temporarily close the center lane of Highway 65 to public use.

The trial court did not err in denying Sutton's motion for judgment of acquittal. Substantial evidence supported Sutton's conviction of driving while revoked. Point is denied.

## Conclusion

We affirm the trial court's judgment.

_____
Cynthia L. Martin, Judge

All concur